
FILED

Sep 27 2023, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Caren L. Pollack
Pollack Law Firm, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEES

James H. Young
Young & Young
Indianapolis, Indiana

Gregory L. Laker
Amina A. Thomas
Cohen & Malad, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

New Augusta North Public
Academy and Metropolitan
School District of Pike
Township,

*Appellants-Defendants,*

v.

K.G., a Minor, by her Parent
and Next Friend Melody Ruch,
Individually,

*Appellees-Plaintiffs.*

September 27, 2023

Court of Appeals Case No.
23A-CT-871

Appeal from the Marion Superior
Court

The Honorable Ezra H.
Friedlander, Senior Judge

Trial Court Cause No.
49D02-1908-CT-34744

**Opinion by Judge Tavitas**
Judges Bailey and Kenworthy concur.

**Tavitas, Judge.**

## Case Summary

New Augusta North Public Academy and the Metropolitan School District of Pike Township (collectively, the "School") appeal the trial court's grant of partial summary judgment to K.G., a minor, by her parent and next friend, Melody Ruch ("Mother") (collectively, "Plaintiffs") regarding Plaintiffs' respondeat superior claim and the trial court's denial of the School's motion for partial summary judgment regarding individual claims brought by Mother. We conclude that: (1) the trial court erred by granting summary judgment to Plaintiffs on their respondeat superior claim because genuine issues of material fact exist; and (2) the trial court properly denied the School's motion for partial summary judgment regarding Mother's individual claims because the School waived the notice of the tort claim issue. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## Issues

The School raises two issues, which we restate as:

> I. Whether the trial court properly granted Plaintiffs' motion for partial summary judgment regarding their respondeat superior claim.

> II. Whether the trial court properly denied the School's motion for partial summary judgment regarding Mother's individual claims due to Mother's failure to file a proper notice of tort claim.

## Facts

[3] K.G. was born in 2004. She was born with cerebral palsy, microcephaly, congenital quadriplegia, optic nerve hypoplasia, and epilepsy. K.G. is nonverbal and is limited in her communication, vision, physical movement, and comprehension.

[4] K.G. was a student at the School from October 2015 to January 2016. Morgan Smith was employed by the School as an instructional assistant. Smith's duties included caring for K.G.'s "diaper changes and other needs related to her physical hygiene and overall wellbeing." Appellants' App. Vol. II p. 105. Smith was required to "undress [K.G.], clean her genitals, perianal and anal areas, apply medications/salves if necessary, and dress [K.G.] afterward." *Id.* Smith touched K.G. to help stretch her limbs, to move her from her chair to other positions, and to calm or reassure her. The School did not require that diaper changes be performed with another adult present, and Smith performed the diaper changes and hygiene care in a private area.

[5] Between October 2015 and January 2016, Smith sexually abused K.B. by digital penetration while changing her diaper. Around this time, K.G. started suffering from sleeplessness and night terrors and became combative with her caregivers. Ultimately, Mother had to place K.G. in a chronic care facility.

[6] In February 2018, Smith confessed to sexually abusing K.G., and Mother learned of the abuse on February 22, 2018. The State charged Smith in May 2018, and Smith pleaded guilty to child molesting, a Level 3 felony, in April 2019.[1]

[7] On May 14, 2019, Plaintiffs sent a notice of tort claim, which provided in part:

> Pursuant to the Indiana Tort Claims Act governing notice of tort claims (I.C. § 34-13-3-6, 8, 9, and 10), notice is hereby given of the claim of [K.G.], Individually[,] and [Mother], as Parent and Natural Guardian of [K.G.], a minor, for personal injuries received by [K.G.] at the Metropolitan School District of Pike Township, New Augusta North Public Academy.

Appellant's App. Vol. II pp. 177-78. The notice named K.G., Mother, Smith, and school personnel as "individuals and entities" that "may be involved." *Id.* at 178.

[8] In August 2019, Plaintiffs filed a complaint against the School and Smith. Plaintiffs alleged that Smith was acting within the scope of her employment and that the School was vicariously liable for Smith's conduct under respondeat superior principles.[2] Plaintiffs alleged that K.G. suffered trauma as a result of the School's negligence and that Mother, individually, suffered negligent infliction of emotional distress as a result of the sexual abuse of K.G., lost the ability to care for K.G. in her home, and incurred economic damages for the

---

[1] Smith was sentenced to thirteen years, all suspended to probation.

[2] Plaintiffs also brought claims for negligent hiring, training, and retention. Those claims, however, are not at issue here.

placement of K.G. in a chronic care facility. In paragraph 13 of the complaint, Plaintiffs alleged that they "timely and appropriately sent [a] Tort Claim Notice" to the School on May 14, 2019. Appellant's App. Vol. II p. 18. In its answer, the School admitted the allegations contained in paragraph 13 of the complaint.

[9]     In June 2020, the School filed a motion for partial summary judgment regarding Mother's individual claim. The School alleged that, because Mother was neither physically present during the abuse nor physically impacted, her claim for emotional distress could not survive. The trial court granted the School's motion for partial summary judgment regarding Mother's individual claims. On appeal, this Court affirmed the grant of summary judgment regarding Mother's emotional distress claim but reversed summary judgment regarding Mother's economic damages because the School did not seek summary judgment regarding that claim. Our Supreme Court granted transfer and, on December 22, 2021, the Court held:

> [W]hen a caretaker assumes responsibility for a child, and when that caretaker owes a duty of care to the child's parent or guardian, a claim against the caretaker for the negligent infliction of emotional distress may proceed when the parent or guardian later discovers, with irrefutable certainty, that the caretaker sexually abused that child and when that abuse severely impacted the parent or guardian's emotional health.

*K.G. ex rel. Ruch v. Smith*, 178 N.E.3d 300, 303 (Ind. 2021). Our Supreme Court held that summary judgment was improperly granted on both Mother's

negligent infliction of emotional distress claim and Mother's individual claim for economic damages. *Id*. at 314.

[10] On remand, Plaintiffs filed a motion for partial summary judgment on their respondeat superior claim. Plaintiffs argued that: (1) Smith's molestation of K.G. was established as a matter of law; and (2) the sexual assault arose out of and was committed during the course of Smith's employment with the School. Plaintiffs also argued that Mother was entitled to summary judgment on her individual claim for emotional distress. Plaintiffs contended that no genuine issue of material fact existed. In support of their motion, Plaintiffs designated the complaint, Mother's deposition, an affidavit from K.G.'s teacher, and documents regarding Smith's criminal case.

[11] On April 1, 2022, the School filed a motion for leave to amend its answer and argued that Mother's notice of tort claim was untimely. Over Mother's objection, the trial court granted the School's motion to amend. The School's amended answer denied the allegations of paragraph 13 of the complaint, and the amended affirmative defenses included the following: "[Mother] failed to give Defendants notice of her individual claim within 180 days after her alleged loss, as required by the Indiana Tort Claims Act . . . ." Appellant's App. Vol. II p. 154.

[12] On April 18, 2022, Mother sent a second notice of tort claim, which provided in part:

> Pursuant to the Indiana Tort Claims Act governing notice of tort claims (I.C. § 34-13-3-6, 8, 9, and 10), notice is hereby given of the claim of [K.G.], Individually[,] and [Mother], as Parent and Natural Guardian of [K.G.], a minor, for personal injuries received by [K.G.] at the Metropolitan School District of Pike Township, New Augusta North Public Academy, and injuries and losses suffered by [Mother], individually as a result of the sexual molestation of her child. This Notice is supplementation to the Notice previously given concerning these claims on May 14, 2019, and since the decision handed down by the Indiana Supreme Court on December 23, 2021, in the case *K G. [ex rel.] Ruch v. Smith*, 178 N.E.3d 300 (Ind. 2021).

Appellants' App. Vol. III pp. 3-4.

[13] The School filed a response to Plaintiffs' motion for partial summary judgment and a cross-motion for summary judgment as to Mother's claims. The School argued that Smith's guilty plea did not bind the School and that Plaintiffs' respondeat superior claims were a matter for the jury to decide. The School designated no evidence in response to Plaintiffs' motion.

[14] In the cross-motion, the School also argued that Mother's notice of tort claim was untimely. The School alleged that Mother learned of the molestation on February 22, 2018; Mother had 180 days to file her notice of tort claim, which would have been August 21, 2018; but Mother did not file her notice until May 14, 2019, several months too late. Moreover, the School argued that the notice did not identify Mother as having a claim. The School, thus, argued that it was entitled to summary judgment on Mother's individual claims. In support of the cross-motion, the School designated the May 14, 2019 notice of tort claims.

[15]     In response to the School's cross-motion for summary judgment, Mother argued that the School waived the notice of tort claim argument by failing to raise the issue earlier. Mother also argued that her notice of tort claim substantially complied with the relevant statutes and that the notice was timely because "K.G.'s minority and incapacity tolled her time to file a tort claim notice under Indiana Code § 34-13-3-9." Appellant's App. Vol. II p. 200. Alternatively, Mother argued that her April 18, 2022 notice of tort claim was timely in light of the Supreme Court's creation of a "new cause of action." *Id.* at 206. Mother designated, in part, her April 18, 2022 notice of tort claim.

[16]     In April 2023, the trial court entered an order: (1) granting Plaintiffs' motion for partial summary judgment; (2) denying the School's motion for partial summary judgment; and (3) setting a pre-trial conference for the purpose of scheduling a trial on the issue of damages. The trial court found "no just reason for delay, and expressly enter[ed] judgment . . . ." *Id.* at 15; *see* Ind. Trial Rule 56(C). The School now appeals.

## Discussion and Decision

[17]     The School challenges the trial court's denial of its motion for partial summary judgment and the trial court's grant of partial summary judgment to Mother. "'When this Court reviews a grant or denial of a motion for summary judgment, we stand in the shoes of the trial court.'" *Minser v. DeKalb Cnty. Plan Comm'n*, 170 N.E.3d 1093, 1098 (Ind. Ct. App. 2021) (quoting *Burton v. Benner*, 140 N.E.3d 848, 851 (Ind. 2020)). "Summary judgment is appropriate 'if the

designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id*. (quoting *Murray v. Indianapolis Pub. Schs.*, 128 N.E.3d 450, 452 (Ind. 2019)); *see also* Ind. Trial Rule 56(C).

[18] The summary judgment movant invokes the burden of making a prima facie showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Burton*, 140 N.E.3d at 851. The burden then shifts to the non-moving party to show the existence of a genuine issue of material fact. *Id*. On appellate review, we resolve "[a]ny doubt as to any facts or inferences to be drawn therefrom . . . in favor of the non-moving party." *Id*.

[19] We review the trial court's ruling on a motion for summary judgment de novo, and we take "care to ensure that no party is denied his day in court." *Schoettmer v. Wright*, 992 N.E.2d 702, 706 (Ind. 2013). "We limit our review to the materials designated at the trial level." *Gunderson v. State, Ind. Dep't of Nat. Res.*, 90 N.E.3d 1171, 1175 (Ind. 2018).

## I. Plaintiffs' Respondeat Superior Claim

[20] The School argues that the trial court erred by granting summary judgment to Plaintiffs on their respondeat superior claim. "For well over a hundred years, Indiana has recognized the doctrine of *respondeat superior*—Latin for let the 'superior make answer.'" *Cox v. Evansville Police Dep't*, 107 N.E.3d 453, 460 (Ind. 2018) (quoting BLACK'S LAW DICTIONARY 1505 (10th ed. 2014)).

"Under this doctrine, an employer is liable for employees' tortious acts only if those acts occurred within the scope of employment." *Id.*

[21] "Whether an act falls within the scope of employment is generally a question of fact." *Id.* When, however, "the relevant facts are undisputed and would not allow a jury to find that the tortious acts were within the scope of employment, we may conclude as a matter of law that they were not." *Id.* Our Supreme Court explored the scope-of employment rule in *Cox* and explained:

> The scope-of-employment rule emanates from the concept of control. More specifically, it springs from the employer's control over its employees and their employment activities: the employer controls whom it hires, what employment duties it assigns, how it empowers employees to carry out those duties, and how it guards against harm arising from employment activities.
>
> Although scope-of-employment liability is rooted in this control, it extends beyond actual or possible control, holding employers responsible for some risks inherent in the employment context. Ultimately, the scope of employment encompasses the activities that the employer delegates to employees or authorizes employees to do, plus employees' acts that naturally or predictably arise from those activities.
>
> This means that the scope of employment—which determines whether the employer is liable—may include acts that the employer expressly forbids; that violate the employer's rules, orders, or instructions; that the employee commits for self-gratification or self-benefit; that breach a sacred professional duty; or that are egregious, malicious, or criminal.

The scope of employment extends beyond authorized acts for two key reasons. First, it is equitable to hold people responsible for some harms arising from activities that benefit them. When employees carry out assigned duties, those employment activities "further the employer's business" to an appreciable extent, benefiting the employer. But delegating employment activities also carries an inherent risk that those activities will naturally or predictably give rise to injurious conduct. When that happens, the employer is justly held accountable since the risk accompanies the employer's benefit.

Second, holding employers liable for those injurious acts helps prevent recurrence. Employers can take measures—like selecting employees carefully and instituting procedures that lessen employment dangers—to reduce the likelihood of tortious conduct. Since employers have some control over the risk of injurious conduct flowing from employment activities, imposing liability on employers for that conduct encourages them to take preventive action.

To be clear, the focus in determining the scope of employment "must be on how the employment relates to the context in which the commission of the wrongful act arose." When tortious acts are so closely associated with the employment that they arise naturally or predictably from the activities an employee was hired or authorized to do, they are within the scope of employment, making the employer liable. But tortious acts are not within the scope of employment when they flow from a course of conduct that is independent of activities that serve the employer.

*Id.* at 461-62 (internal citations omitted).

[22] Even "criminal conduct that violates an employee's official duties, an employer's express orders, or even a most sacred professional duty may

nevertheless be within the scope of employment." *Id.* at 463-64. "The critical inquiry is whether the tortious act arose naturally or predictably from the employment context." *Id.* at 464.

[23]    In *Cox*, our Supreme Court determined that whether an officer's on-duty sexual assault of a citizen was within the scope of his employment was a question of fact for the jury. It is "[b]eyond question" that "cities do not authorize their police officers to sexually assault people." *Id.* at 460. "Indeed, sexual assault is directly opposed to police officers' law-enforcement and community-caretaking functions." *Id.* The officer's conduct, however, was not "so disconnected from his employment activities that a jury could not find that the assault arose naturally or predictably from the employment context." *Id.* at 463. Accordingly, the Court held that the trial court improperly granted summary judgment to the City, and on remand, "the jury must decide if [the officer's] employment activities naturally or predictably led to 'his taking advantage of the opportunity' to commit sexual assault by abusing the 'authority and proximity and privacy' of his employment." *Id.* at 464 (quoting *West ex rel. Norris v. Waymire*, 114 F.3d 646, 649 (7th Cir. 1997)).

[24]    The Court reached a different result in *Barnett v. Clark*, 889 N.E.2d 281 (Ind. 2008). There, a deputy township trustee sexually assaulted a citizen applying for public assistance, and the citizen filed a complaint against the township trustee. The trial court granted summary judgment to the trustee on the respondeat superior claim. In determining whether the deputy trustee's actions were within the scope of his employment, our Supreme Court held:

> Taking the facts of the present case favorable to the plaintiff, as we must, we nevertheless conclude here that the injurious actions of the deputy trustee were not sufficiently associated with his employment duties so as to fall within the scope of the deputy's employment by the defendant Trustee. . . . Other than perhaps a greeting handshake, the employee was not explicitly or impliedly authorized to touch or confine applicants for assistance. His alleged acts of confining, sexually touching, and raping the plaintiff were not an extension of authorized physical contact. Such acts were not incidental to nor sufficiently associated with the deputy trustee's authorized duties. They did not further his employer's business. And they were not motivated to any extent by his employer's interests. The deputy trustee's injurious acts did not fall within the scope of his employment for the defendant Trustee, and thus the Trustee is not vicariously liable under the doctrine of *respondeat superior*.

*Id.* at 286. Thus, the trial court properly granted summary judgment to the trustee on the citizen's claim.

[25] Finally, our Supreme Court considered a case similar to the instant case in *Stropes ex rel. Taylor v. Heritage House Childrens Center of Shelbyville, Inc.*, 547 N.E.2d 244 (Ind. 1989). There, a disabled child unable to care for himself was placed at the Heritage House Children's Center ("Center"), where a nurse's aide, Robert Griffin, sexually assaulted the child while changing the child's clothing and bedding. Griffin's duties included feeding, bathing, and changing the bedding and clothing of residents. A complaint was filed against Griffin and the Center, and the trial court granted summary judgment to the Center.

[26] On appeal, our Supreme Court considered whether Griffin's actions were outside the scope of his employment for purposes of respondeat superior

liability. Some of Griffin's acts were "unquestionably within the scope of his employment," like changing the bedding on the child's bed, undressing the child, and touching the child's genitals to bathe him. *Stropes*, 547 N.E.2d at 249. It was "beyond question," however, that the sexual abuse was unauthorized and committed for Griffin's own gratification. *Id.* The Court noted:

> The fact that this was a sexual assault is not per se determinative of the scope of employment question. A blanket rule holding all sexual attacks outside the scope of employment as a matter of law because they satisfy the perpetrators' personal desires would draw an unprincipled distinction between such assaults and other types of crimes which employees may commit in response to other personal motivations, such as anger or financial pressures. Rather, the nature of the wrongful act should be a consideration in the assessment of whether and to what extent Griffin's acts fell within the scope of his employment such that Heritage should be held accountable.

> Rape and sexual abuse constitute arguably the most egregious instances of wrongful acts which an employee could commit on the job and lend themselves to arguably the most instinctive conclusion that such acts could never be within the scope of one's employment, yet other courts have recognized that the resolution of the question does not turn on the type of act committed or on the perpetrator's emotional baggage accompanying the attack. Rather, these courts indicate that the focus must be on how the employment relates to the context in which the commission of the wrongful act arose.

*Id.* at 249.

The Court held that a jury might find Griffin "acted to an appreciable extent to further his master's business" and "that his actions were, 'at least for a time, authorized by his employer, related to the service for which he was employed, and motivated to an extent by [his employer's] interests.'" *Id.* at 250 (quoting *Gomez v. Adams*, 462 N.E.2d 212, 224-25 (Ind. Ct. App. 1984)). On the other hand, a jury might find that Griffin's acts were "so 'divorced in time, place and purpose' from his employment duties as to preclude the imposition of liability on his employer." *Id.* (quoting *Gomez*, 462 N.E.2d at 223). Accordingly, "[t]he nature of the acts were, at the very least, sufficiently associated with Griffin's authorized duties to escape dismissal on summary judgment." *Id.* Thus, the Supreme Court reversed summary judgment for the Center.

We find *Cox* and *Stropes* persuasive here. As in *Stropes*, Smith's duties as part of her employment for the School included caring for K.G.'s "diaper changes and other needs related to her physical hygiene and overall wellbeing." Appellants' App. Vol. II p. 105. Smith was required to "undress [K.G.], clean her genitals, perianal and anal areas, apply medications/salves if necessary, and dress [K.G.] afterward." *Id.* Smith touched K.G. to help stretch her limbs, to move her from her chair to other positions, and to calm or reassure her. Smith sexually abused K.G. while Smith was changing K.G.'s diaper.

As in *Stropes*, it is "beyond question," that the sexual abuse was unauthorized and committed for Smith's own gratification. *Stropes*, 547 N.E.2d at 249. The fact that the sexual assault was unauthorized is, however, "not per se determinative of the scope of employment question." *Id.* Rather, genuine

issues of material fact exist, and as in *Cox* and *Stropes*, whether Smith was acting within the scope of her employment is a fact sensitive matter for the jury to decide. We conclude that the trial court erred by granting summary judgment to Plaintiffs on the respondeat superior issue, and we remand for a trial on the issue.

## II. *Notice of Tort Claim*

Next, the School argues that the trial court erred by denying its motion for partial summary judgment regarding Mother's individual claims. The School argues that it is entitled to summary judgment because Mother failed to file a timely notice of tort claim. Mother, however, contends in part that the School waived the issue of compliance with the ITCA by failing to raise the issue as an affirmative defense until years into the litigation and that the law of the case doctrine bars the School from raising the issue.[3] We agree with Mother.

The Indiana Tort Claims Act's ("ITCA") notice of tort claim "requirement is intended to ensure that government entities have the opportunity to investigate the incident giving rise to the claim and prepare a defense." *Schoettmer*, 992 N.E.2d at 706 (citing *Galbreath v. City of Indianapolis*, 253 Ind. 472, 477, 255 N.E.2d 225, 228 (1970)). "Like any statute in derogation of the common law,

---

[3] Mother also argues that: (1) Mother's May 14, 2019 tort claim was timely because her claim is derivative of K.G.'s timely claim and substantially complied with the ITCA; (2) res judicata precludes the School from raising the issue; and (3) Mother's April 18, 2022 notice of tort claim was timely because the Supreme Court created a new cause of action. Given our resolution of Mother's waiver argument, we need not address these issues.

the ITCA 'must be strictly construed against limitations on the claimant's right to bring suit.'" *Id.* (quoting *City of Indianapolis v. Buschman*, 988 N.E.2d 791, 794 (Ind. 2013)). "[S]o long as its essential purpose has been satisfied, [the ITCA] should not function as 'a trap for the unwary.'" *Id.* (quoting *Galbreath*, 253 Ind. at 480, 255 N.E.2d at 229). "'The question of compliance is not a question of fact for the jury but ultimately a legal determination to be made by the court.'" *Murphy v. Ind. State Univ.*, 153 N.E.3d 311, 317 (Ind. Ct. App. 2020) (quoting *Ind. State Highway Comm'n v. Morris*, 528 N.E.2d 468, 471 (Ind. 1988)).

[32] The ITCA bars tort claims against political subdivisions unless the plaintiffs file a notice of tort claim within 180 days "after the loss occurred."[4] Ind. Code § 34-13-3-8(a); *Lyons v. Richmond Cmty. Sch. Corp.*, 19 N.E.3d 254, 259 (Ind. 2014). Indiana Code Section 34-13-3-9, however provides: "If a person is incapacitated and cannot give notice as required in section 6 or 8 of this chapter, the person's claim is barred unless notice is filed within one hundred eighty (180) days after the incapacity is removed."

[33] The parties agree that the May 14, 2019 notice was sufficient as to K.G.'s claims because of her incapacity. *See* I.C. § 34-13-3-9; *see, e.g.*, *City of Indianapolis v. Hicks*, 932 N.E.2d 227, 235 (Ind. Ct. App. 2010) ("Hicks's daughter's status as a minor makes her incapacitated and postpones the

---

[4] On July 1, 2018, Indiana Code Chapter 34-13-3.5 went into effect and governs civil actions against public schools. Neither Plaintiffs nor the School, however, argue that it is applicable here.

deadline for filing a notice of tort claim until after her minority ends."), *trans. denied*. The parties also agree that Mother did not learn of the sexual abuse until February 22, 2018, and that the discovery rule applies. *See Lyons*, 19 N.E.3d at 262 ("When the discovery rule applies, the time for filing does not begin to run until the plaintiff knows or in the exercise of ordinary diligence should know of the tort."). One hundred and eighty days after the discovery of the sexual abuse was August 21, 2018. The first notice of tort claim, however, was not filed until May 14, 2019. After the Supreme Court's December 22, 2021 opinion on Mother's individual claims, Mother sent a second notice of tort claim on April 18, 2022. The School argues that Mother's notices of tort claim related to her individual claims were untimely.

[34] Mother argues that the School waived compliance with the ITCA by: (1) admitting in its answer that Plaintiffs' notice of tort claim was timely and proper; (2) failing to file an affirmative defense regarding the ITCA; (3) failing to raise the issue in its first motion for summary judgment; and (4) failing to amend its answer until the Supreme Court had already addressed the propriety of Mother's claims.

[35] In October 2019, the School initially admitted that Plaintiffs' notice of tort claim was timely and appropriate. The School then filed a motion for partial summary judgment regarding Mother's negligent infliction of emotional distress claim, and the issue was decided by our Supreme Court in December 2021. Our Supreme Court held that Mother's negligent infliction of emotional distress claim was viable. The School did not seek to raise an ITCA defense until April

2022, two and one-half years after admitting that Plaintiffs' notice of tort claim was timely and appropriate. The School claimed that it did not raise the ITCA defense initially because it "knew that the law as it existed at the time of the filing of their Answer was such that they would prevail on the merits as to any individual claim of [Mother's]." Appellees' App. Vol. II p. 8.

[36] Our Supreme Court addressed the failure of a government entity to raise an ITCA defense in its original answer in *Schoettmer*, 992 N.E.2d 702. The government entity there sought to amend its answer three months after its initial answer, and our Supreme Court found that the trial court did not abuse its discretion by allowing the amendment. The Court noted that an ITCA notice defense is waived if not "asserted in a responsive pleading." *Schoettmer*, 992 N.E.2d at 706 (quoting *Thompson v. City of Aurora*, 263 Ind. 187, 190, 325 N.E.2d 839, 841 (1975)). "An answer is a responsive pleading, and our trial rules permit a party to amend his pleading by leave of court, which should be granted 'when justice so requires.'" *Id.* (quoting Ind. Trial Rule 15(A)); *see also* Ind. Trial Rule 15(C) (noting that "the amendment relates back to the date of the original pleading"). Our Supreme Court held that, "[a]bsent prejudice to the non-moving party, . . . such amendments 'should be liberally allowed.'" *Schoettmer*, 992 N.E.2d at 706 (quoting *Templin v. Fobes*, 617 N.E.2d 541, 543 (Ind. 1993)).

[37] The circumstances here are much different than in *Schoettmer*. Here, the School waited years before changing its position on the ITCA defense; in fact, our Supreme Court had already ruled on the viability of Mother's individual claim

and created a new rule regarding negligent infliction of emotional distress claims. Mother is clearly prejudiced by the School's delayed assertion of an ITCA defense.

[38] Judicial estoppel principles are also relevant here. "Judicial estoppel 'prevents a party from asserting a position in a legal proceeding inconsistent with one previously asserted.'" *PSI Energy, Inc. v. Roberts*, 829 N.E.2d 943, 957 (Ind. 2005) (quoting *Meridian Ins. Co. v. Zepeda*, 734 N.E.2d 1126, 1133 (Ind. Ct. App. 2000)), *abrogated on other grounds by Helms v. Carmel High Sch. Vocational Bldg. Trades Corp.*, 854 N.E.2d 345 (Ind. 2006). "A party may properly plead alternative and contradictory theories, but judicial estoppel precludes a party from repudiating assertions in the party's own pleadings." *Id.* "The purpose of judicial estoppel is to protect the integrity of the judicial process rather than to protect litigants from allegedly improper conduct by their adversaries." *Smith v. State*, 765 N.E.2d 578, 583 (Ind. 2002). "It does so by preventing a party and its counsel from playing fast and loose with the courts." *Id.*

[39] The School allowed this litigation to proceed through summary judgment proceedings, appellate proceedings in this Court, and appellate proceedings in our Supreme Court regarding Mother's individual claim before raising the issue of the ITCA because the School thought it would "prevail on the merits" of Mother's individual claim. Appellees' App. Vol. II p. 8. Although a party is generally permitted to amend its pleadings, under the circumstances here, the School was "playing fast and loose with the courts" by its delay in raising the ITCA defense. We conclude that, unlike in *Schoettmer*, the School waived its

ITCA defense by failing to present it in a timely manner. Accordingly, the trial court properly denied the School's motion for partial summary judgment regarding Mother's individual claims.

## Conclusion

[40] The trial court erred by granting Plaintiffs' motion for partial summary judgment regarding Plaintiffs' respondeat superior claim. The trial court, however, properly denied the School's motion for partial summary judgment regarding Mother's individual claims. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

[41] Affirmed in part, reversed in part, and remanded.

Bailey, J., and Kenworthy, J., concur.